PER CURIAM.
 

 Richard Elbert filed a five-claim motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). The postconviction court treated claim one under rule 3.800(a) and claims two through five under Florida Rule of Criminal Procedure 3.850 and denied all claims. We affirm as to claim one without further comment but reverse and remand as to claims two through five. We treat these latter claims as one claim alleging an involuntary plea due to the affirmative misadvice of counsel.
 

 In January 1993, Elbert was convicted of multiple felonies grouped under seven case numbers. He was sentenced on all charges at one proceeding. For the second-degree felonies, he was sentenced as a habitual felony offender (HFO) to twenty-five years in prison, with twenty years suspended to be served on probation; for. the third-degree felonies, he was sentenced to ten years, with five years suspended. These are true split sentences.
 
 See Poore v. State,
 
 531 So.2d 161, 164 (Fla.1988),
 
 superseded, by statute on other grounds as recognized in Crews v. State,
 
 779 So.2d 492, 493-94 (Fla. 2d DCA 2000);
 
 see also
 
 § 948.01(6), Fla. Stat. (1991) (subsequently renumbered as § 948.012(1),
 
 see
 
 ch. 2004-373, § 4, Laws of Fla.). All sentences were concurrent.
 

 In March 1995, Elbert violated his probation. Elbert entered a plea, and the court revoked Elbert’s probation and sentenced him as an HFO to twenty years in prison for the second-degree felonies and, after a reduction, to five years in prison for the third-degree felonies. For all counts, the court checked the prison credit line item on the sentencing document that reads: “It is further ordered that the defendant be allowed credit for all time previously served on this count in the Department of Corrections prior to resen-tencing.”
 

 In the present proceeding, Elbert raised five claims in a “motion to correct illegal sentence.” The postconviction court properly treated claims two through five under rule 3.850 because they allege, under oath, an involuntary plea and ineffective assistance of counsel at the revocation proceeding.
 
 See Hettick v. State,
 
 977 So.2d 797, 798 (Fla. 2d DCA 2008). The court summarily denied the claims.
 
 [1]
 

 In his motion, Elbert alleged that shortly before his projected release date, after he had served twelve and one-third years in prison, the Department of Corrections (DOC) performed a prerelease audit and postponed his release date from February 6, 2007, to November 17, 2011. He attached to his motion a copy of his internal grievance to DOC, in which he complained about a loss of gain time, and a copy of DOC’s response, in which DOC informed him that prison credit as well as gain time
 
 *963
 
 earned during his initial prison tenn was being removed.
 
 [2]
 

 Claims two through five of Elbert’s motion are variations on the same theme, with claims two and three alleging an involuntary plea and claims four and five alleging ineffective assistance of counsel. The gist of the claims, taken together, is that Elbert’s plea upon violation of probation (VOP) was involuntary because counsel incorrectly informed him that his twenty-year VOP sentence “would effectively be a 15 year sentence” based on prison credit and gain time earned during his initial prison term. The postconviction court denied the claim, in part, on the ground that “forfeiture of accumulated gain time by DOC is a collateral consequence of a plea and neither the Court nor counsel must advise a defendant of this consequence for the plea to be valid.”
 
 [3]
 
 However, “[affirmative misadvice about even a collateral consequence of a plea constitutes ineffective assistance of counsel and provides a basis on which to withdraw the plea.”
 
 Roberti v. State,
 
 782 So.2d 919, 920 (Fla. 2d DCA 2001). Here, Elbert did allege that counsel advised him to take the twenty-year sentence because it would be reduced by prison credit and gain time — a reduction that ultimately did not take place. As such, he raised a facially sufficient claim that his plea was involuntary due to affirmative misadvice.
 

 
 *964
 
 The postconviction court also attempted to refute Elbert’s claim of prejudice from his counsel’s misadvice by pointing out that if a consecutive two-year sentence for convictions not at issue here were subtracted from Elbert’s current release date calculated by DOC,
 
 [4]
 
 he would effectively serve about fourteen years, a shorter sentence than the fifteen years his counsel advised him he would serve. However, the postconviction court’s reasoning is based on an unfair comparison. Elbert’s motion contrasts a fifteen-year sentence with a twenty-year sentence; both terms of years represent preliminary sentences — terms of years that Elbert would or did start out with, reducible by new gain time. The court contrasts a
 
 net
 
 sentence of fourteen years with a preliminary sentence of fifteen years. Such a comparison does not refute Elbert’s claim.
 

 Because claims two through five have not been conclusively refuted, we reverse and remand for an evidentiary hearing. To prevail at that hearing, Elbert “must demonstrate that counsel affirmatively mi-sadvised him and that he would not have pleaded had he been properly advised.”
 
 Roberti,
 
 782 So.2d at 920.
 

 Affirmed in part; reversed in part with instructions.
 

 WHATLEY, KELLY, and WALLACE, JJ., Concur.
 

 [1]
 

 . Even though the recent opinion of the Florida Supreme Court in
 
 Ey v. State,
 
 982 So.2d 618 (Fla.2008), if applied here, might initially cast doubt on the timeliness of claims two and five, we nevertheless conclude that these claims are timely because in February 2007 when the motion was filed, Elbert could not have known of the new
 
 Ey
 
 rule. We therefore address the merits of these claims.
 

 [2]
 

 . DOC’s revised determination of Elbert's sentence was apparently based on its review of the sentencing documents filled out by the court when it revoked Elbert's probation. How courts fill out postrevocation sentencing documents when the original sentence was a true split sentence has been a source of confusion. The court can impose the original full term of years as the postrevocation sentence, with credit for prison time already served on the nonsuspended component of the original sentence. The court awards this credit by checking the generic "prison credit” line item on the sentencing documents without specifying a certain number of days or years. Alternatively, the court may impose the suspended portion of the original underlying sentence with no credit for time served on the nonsus-pended portion. The court may effect such a sentence by leaving the "prison credit” line item unchecked. The net result in terms of net incarceration time is tire same under either variation.
 
 See Moore v. Stephens,
 
 804 So.2d 575, 577 (Fla. 5th DCA 2002) (describing these two sentencing variations).
 

 Confusion arises when the sentencing court imposes the suspended portion of the original underlying sentence but also checks off the generic “prison credit” line item. In this situation, the defendant, perhaps along with counsel, may believe that credit for time initially spent in prison will be applied. In practice, however, because the court has imposed the suspended portion of the original sentence, DOC applies no credit for prison time served under the original, nonsuspend-ed, sentence. This court has concluded that a circuit court does not err in finding legal this method of effecting a sentence.
 
 See Pressly v. Tadlock,
 
 968 So.2d 1057, 1059 (Fla. 2d DCA 2007);
 
 see also Roberts v. State,
 
 702 So.2d 239 (Fla. 2d DCA 1997). It would thus appear that the revised prison term as determined by DOC in its prerelease audit was permissible. We note also that DOC acted within its discretion in revoking any gain time associated with Elbert’s original, nonsuspended sentence.
 
 See
 
 §§ 944.28(1), 948.06(6), Fla. Stat. (1993);
 
 Eldridge v. Moore,
 
 760 So.2d 888, 890-91 (Fla.2000).
 

 [3]
 

 . It should be noted that Elbert's claim concerns both prison credit and gain time. The postconviction court found that the DOC documentation attached to Elbert’s motion "has failed to show that DOC has removed any of the time actually served by Defendant.” This observation is not accurate. DOC noted the following in a memo to Elbert dated February 6, 2007, which he attached to his motion:
 

 The following corrections were made during an audit.
 

 Please review and advise.
 

 PEX B: Reaudit per Roberts & orders of 9/98, 10/98, and 1/07 results in rechaining [sic] &
 
 removal of prison credit
 
 & application of Mayes/Bennett TRD changes from 7-13-07 to 11-17-2011....
 

 (Emphasis added.)
 

 [4]
 

 .
 
 See
 
 § 944.275(3)(a), Fla. Stat. (2003) (requiring that DOC establish a "tentative release date” for each prisoner based on gain time earned going forward).